**UNITED STATES of America, Plaintiff,**

**v.**

**Michael J. SWIATEK, Thomas J. Bambulas, Edward J. Pedote, Defendants.**

**No. 85 CR 538.**

United States District Court, N.D. Illinois, E.D.

Feb. 21, 1986.

Thomas Knight, Chicago Strike Force, Chicago, Ill., for plaintiff.

Ralph E. Meczyk, Joseph R. Lopez, Barrister Hall, Santo J. Volpe, Glenn Seiden & Assoc., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

The four Count indictment in this case charges the Defendants, Swiatek, Bambu-

las and Pedote, with the following violations of federal statutes;

    (1) 18 U.S.C. § 1951 (conspiracy to obstruct, delay and affect interstate commerce by robbery) (all Defendants);

    (2) 18 U.S.C. § 923 (knowingly engaging in the business of dealing in firearms without a license) (Pedote);

    (3) 18 U.S.C. §§ 922(a)(1) and 924(a) (willful and knowing membership in a conspiracy in which a § 923 violation was committed) (Swiatek and Bambulas);

    (4) 26 U.S.C. § 5812 (knowing transfer of § 5845(a)(7) firearms (three silencers) without the proper application) (Pedote);

    (5) 26 U.S.C. §§ 5861(e) and 5871 (membership in a conspiracy in which a § 5845(a)(7) violation was committed) (Swiatek and Bambulas);

    (6) 26 U.S.C. § 5812 (transfer of a firearm (one silencer) without the proper application) (Pedote);

    (7) 26 U.S.C. §§ 5861(e) and 5871 (membership in a conspiracy in which a § 5812 violation was committed) (Swiatek and Bambulas).

The government and all counsel for Defendants participated in Rule 2.04 conferences on September 13, 1985. As a result of the conferences a large volume of information was turned over to Defendants (including tape recordings and documents) and the government agreed to make more evidence available in short order. Defendants, however, were not satisfied. Commencing on September 23, 1985, Defendants filed various motions for additional discovery. Defendants also filed motions for severance and for two hearings; one motion for a *Santiago* hearing and one motion for a "due process" hearing. This Order addresses each of the Defendants' motions.

*I  Bill of Particulars*

    ■ Swiatek and Pedote request a bill of particulars pursuant to Fed.R.Crim.P. 7(f). Specifically, they request

    (1) the time and place the alleged offenses occurred;

    (2) the method or means by which the alleged offenses were committed;

    (3) the name and address of every person relied upon by the government in bringing this prosecution;

    (4) a list of government witnesses;

    (5) the specific criminal history of each government witness;

    (6) the identity of the "clerk" (*see* Gov Ex 165 at 2) who provided Gene Webb with a weapon (.45 caliber, serial # 70315);

    (7) the caliber and serial number of the three firearms transferred by Oscar Luna to Special Agent Mazzolla on December 12, 1985;

    (8) a list of all indicted and unindicted co-conspirators;

    (9) a list of any overt acts in furtherance of the alleged conspiracy which the government intends to introduce at trial;

   (10) the date, time and place in which each of the Defendants is alleged to have become a part of the alleged conspiracy.

This list is but a summary of the particulars requested by Defendants' motions. Several of the requested particulars are too vague to characterize or are repetitious. *See, e.g.,* Pedote Motion at 2, ¶ h. Further, the various motions fail to identify specific prejudice flowing from the lack of particulars. A generalized and conclusory statement of prejudice in support of a motion for a bill of particulars is, in itself, a basis for denying the motion. *See United States v. Wells,* 387 F.2d 807, 808 (CA7 1967) (statement of prejudice in conclusory terms insufficient to override district court's broad discretionary power to deny bill). There is, however, sufficient specificity in the requests outlined above to require the Court to address Defendants' motions.

Defendants generally contend the particulars identified above are necessary to their defense in this case. As previously mentioned, they do not identify any particu-

lar prejudice they would suffer if the bill is denied. The government's response is that a bill is inappropriate in this case because 1) the indictment is sufficiently specific, 2) this is not an overly complex case, 3) much of the requested information can be gathered from materials already furnished to the Defendants, 4) the fact that Defendants are already aware of the particulars they seek (see items 1 through 3) indicates that Defendants seek to get a glimpse at the government's strategy in prosecuting this case, rather than particulars behind the indictment. *See United States v. Lavin,* 504 F.Supp. 1356, 1361–62 (N.D.Ill.1981) (bill should not be used as discovery device aimed at theory and evidentiary details of government's case).

The purpose of a bill of particulars is to 1) provide a defendant with the additional facts necessary to prepare a defense, 2) supply a defendant with sufficient information in order to avoid surprise at trial and 3) protect a defendant from the potential for double jeopardy. *Lavin,* 504 F.Supp. at 1361. Defendants generally contend a bill is necessary for their preparation for the trial of this case. The Court accepts that statement as falling within the first two purposes stated above. Defendants ignore any double jeopardy implications. Accordingly, the Court need not address that issue.

The granting of a bill of particulars rests within the discretion of the trial court. *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed.2d 545 (1927). Relevant factors in the exercise of that discretion include 1) the complexity of the charged offense, 2) the clarity of the indictment and 3) the degree of discovery available to the defendant without the bill. *United States v. Kendall,* 665 F.2d 126, 135 (CA7 1981); *Lavin,* 504 F.Supp. at 1361. Finally, in order to support the orderly administration of justice and give due observance to the rights of an accused, the Court is required to articulate its reasons for the exercise of its discretion denying a motion for a bill of particulars. *United States v. Wells,* 387 F.2d 807, 808 (CA7 1967).

█ The Court finds the indictment in this case meets all of the requirements identified above. The offenses charged in the indictment are not overly complex. The violations of federal law and the supporting facts are stated with clarity. Moreover, the government has provided Defendants with voluminous discovery which fills out any details omitted from the indictment. *See* Government's Report of 2.04 conferences (listing discovery provided to Defendants). *See also* Government's *Santiago* Proffer.

Defendants have a constitutional right to know the offenses with which they are charged, but they have no right to know how the government intends to go about proving those offenses. Thus, because the indictment (along with discovery) adequately informs the Defendants of the offenses with which they are charged, Defendants' motion for a bill of particulars is denied. To do otherwise would provide Defendants with a preview of the government's strategy when Defendants are sufficiently informed to prepare for trial. *See United States v. Kendall,* 665 F.2d 126, 135–36 (CA7 1981); *Lavin,* 504 F.Supp. at 1361. Similar reasons compel the denial of Defendants' motion for a list of witnesses. The Court does not believe this case approaches the complexity necessary to demonstrate the need for a list of the government's witnesses. *See, e.g., United States v. Jackson,* 508 F.2d 1001, 1005–1008 (CA7 1975) (list of witnesses provided where 100 checks and 100 potential witnesses were involved).

## II  Discovery Motions

A.  Defendants ask the Court to order the government to disclose any agreements, promises, payments or other consideration given in return for a promise of testimony or cooperation.

Specifically Defendants request

(1) any government assistance provided to Gene Webb,

(2) any offers of payment by the government for testimony or cooperation,

(3) any inducement or coercion by the government to gain cooperation or testimony,

(4) any information which may be used to impeach potential witnesses pursuant ,to Fed.R.Evid. 609(a) or 611(b).

■ The government's response to Defendants' motion is that 1) if the government has the requested information, then the material a) has been turned over to Defendants or b) will be turned over to Defendants very shortly, or 2) the government denies that any such information is in its possession. In light of the government's response and Defendants' failure to file a reply brief, the Court finds Defendants' motion must be denied. However, the Court reminds Defendants that they may reassert any of their discovery motions if they become aware of *specific* items or materials they believe they are entitled to.

■ A similar fate befalls Defendants' motion for similar acts evidence brought under Fed.R.Crim.P. 12(d)(2). The Court agrees with the government that evidence which may be admissible at trial under Fed.R.Evid. 404(b) need not be turned over to Defendants prior to trial *if that material is not exculpatory within the meaning of Brady v. Maryland* [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]. *See United States v. Kendall,* 766 F.2d 1426, 1440–41 (CA10 1985); *United States v. Carr,* 764 F.2d 496, 500 (CA8 1985). The Court does not read Defendants' motion as claiming any of the requested material is exculpatory in character. Accordingly, Defendants' motion for disclosure of similar acts evidence is denied.

B. Defendants next request discovery of exculpatory and impeaching evidence discoverable under Fed.R.Crim.P. 16, *Brady* and the Jencks Act. *See* Motion for Discovery and Inspection of Evidence Favorable to the Accused and Material to His Defense; Bambulas Motion for Immediate Disclosure of Favorable Evidence; Motion for Disclosure of Impeaching, Exculpatory of Mitigating Evidence. In these motions, Defendants make vague (the Government calls them "boiler plate") requests for material.

■ The government's response addresses each of Defendants' requests and 1) lists the information which satisfies the request or 2) explains why the information is not available to the Defendants. The Defendants offer no reply to the government's response. In failing to reply, Defendants have failed to controvert any of the assertions made by the government in its brief. Thus, on the basis of the government's uncontroverted representations that discovery has been provided to Defendants, the motions for additional discovery are denied at this time. Defendants, however, are free to reassert discovery motions at a later time.

C. Defendants next move under Fed.R. Crim.P. 6(e) and 16(b) for access to testimony by witnesses who appeared before the grand jury. Grand jury testimony is not generally furnished to the defense. *See* Fed.R.Crim.P. 6(e)(2); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). Discoverable materials falling within *Brady v. Maryland,* the Jencks Act and Fed.R. Crim.P. 16(e)(3) are exceptions to the rule. So too is the trial court's exercise of discretion to grant access to grand jury testimony when a defendant is able to show a "particularized need" for the material outweighs the policies supporting the secrecy of grand jury proceedings. *See United States v. Procter & Gamble,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). *See also* Fed.R.Crim.P. 16(e)(3)(c).

Caselaw does not provide an exact definition of "particularized need." Despite this lack of exactitude, it is well established that a defendant makes a sufficient showing of need by a 1) request for materials which are necessary to "avoid a possible injustice" and 2) the request is "structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979).

The "need" pressed by Defendants in this case is for contradictory statements of grand jury witnesses which may be used at trial. Specifically Swiatek wants any conflicting testimony addressing his participation in the conspiracy to rob BMJ. For several reasons, Defendants' request for access to grand jury testimony must be denied.

■ The Jencks Act, 18 U.S.C. § 3500(b), requires the government to furnish Defendants with "any statement of [a] witness ... which relates to the subject matter as to which the witness has testified." That requirement includes statements made by the witness before a grand jury. 18 U.S.C. § 3500(e)(3). *See generally United States v. Bibbero*, 749 F.2d 581, 585 (CA9 1984) (no exceptions to the rule of Jencks Act, not for court to speculate whether material could have been used effectively at trial). The government's *Brady* obligation to a defendant is to furnish "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196. The government insists the material requested by Defendants has been or will be provided under the requirements of the Jencks Act and *Brady*. Consequently, the government argues, Defendants have not shown a true *need* for the material they now request. The Court agrees.

The heart of Swiatek's motion is a request for information which would contradict the charge that he participated in the conspiracy to rob BMJ. Such information is intrinsically *Brady* material. That grand jury testimony is discoverable, regardless of whether the government intends to introduce that same testimony at trial, by reason of the government's *Brady* obligations.[1] Further, if a grand jury witness is produced at trial, then the government is required to furnish the requested material under the Jencks Act. *United States v.*

*Short*, 671 F.2d 178, 186 (CA6), *cert. denied*, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982). In either case, Defendants are assured of the materials which they request in their motion. In other words, Swiatek's articulated "need" for the requested material is satisfied by the Jencks Act and *Brady*. Consequently, there is no necessity for providing access to grand jury materials at this time. Because Swiatek has failed to show a necessity for the requested materials or that such necessity is outweighed by the policies behind the secrecy of grand jury proceedings, the motion for access to grand jury materials is denied.

■ Swiatek also contends that access to grand jury testimony is necessary to support his arguments of prosecutorial misconduct before the grand jury. But Swiatek offers no clue to the form of the misconduct he intends to show as the basis for his motion to dismiss the indictment. Such a vague allegation is inadequate to rebut the presumption of regularity which attaches to grand jury proceedings. *Cf. United States v. Hubbard*, 474 F.Supp. 64 (D.D.C. 1979). *See also United States v. Samango*, 607 F.2d 877, 881–82 (CA9 1979). Further, such vague and conclusory claims fail even to suggest the necessity for access to grand jury materials and render impossible a determination that the request is structured to cover only the needed material. *See Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674. *See also United States v. Lisinski*, 728 F.2d 887, 893–94 (CA7 1984).

D. Defendants next request appears moot at this point. Defendants requested an interview with Gene Webb and the government relented. That ends the matter as far as the Court is concerned.

## III Severance

Pedote moves to sever Count I from the remainder of the indictment. He claims Count I is misjoined (Fed.R.Crim.P. 8(b)) or

1. It is worth noting at this point that if the government had evidence which *clearly* negates guilt, then it had an obligation to present that evidence to the grand jury. On the other hand, the government need not present material which *might* tend to be exculpatory. *See United States v. Dorfman*, 532 F.Supp. 1118, 1133 (N.D. Ill.1981).

joined to his prejudice (Fed.R.Crim.P. 14). Swiatek also filed a motion to sever. He asks that his case be severed from that of his co-defendants because 1) Swiatek's role in the conspiracy was very small and 2) his co-defendant (Bambulas) will testify on his behalf at a separate trial. The Court first addresses Pedote's motion and then proceeds to Swiatek's.

When two defendants are jointly indicted, they should be tried together unless one of the defendants can show that he will not receive a fair trial if tried jointly. *United States v. Velasquez*, 772 F.2d 1348, 1352 (CA7 1985). Fed.R.Crim.P. 8(b) permits the joinder of defendants if the "two defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense." There is no requirement that each defendant be charged in each count of the indictment. Rule 14 allows the Court to sever defendants if it finds prejudicial joinder.

A brief review of the indictment is helpful at this point. Count I charges all Defendants entered into a conspiracy to rob BMJ in violation of the Hobbs Act. 18 U.S.C. § 1951. The dates of the conspiracy as charged are February 20, 1985 through August 20, 1985. Count II charges Pedote with knowingly engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1). That conduct is also charged as an overt act in furtherance of the conspiracy to rob BMJ. *See* Count I, ¶ 11(d). Count II also charges Swiatek and Bambulas with violations of 18 U.S.C. §§ 922(a)(1) and 924(a) as members of a conspiracy during which Pedote committed the firearms violation. *See Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946) (overt act of one partner in conspiracy is attributable to all members of conspiracy).

Counts III and IV charge Pedote with transfers of firearms (silencers) in violation of 26 U.S.C. § 5861(e). Paragraph 11(d) of Count I provides the same reference point for this conduct as an overt act in furtherance of the conspiracy. Accordingly, Count III and IV employ the same theory in charging Swiatek and Bambulas with violations of 26 U.S.C. §§ 5861(e) and 5871 as members of the conspiracy.

■ With these charges in mind, the Court finds the government has met the "common scheme or plan" requirement of Rule 8(b). The indictment charges Pedote agreed to and did furnish the firearms as part of and in furtherance of the conspiracy. Further, Swiatek and Bambulas are charged as members of that conspiracy. These charges indicate the government contemplates proof at trial that Pedote's furnishing of the weapons to Swiatek and Bambulas were part and parcel of the conspiracy to rob BMJ. *See* Government's Response at 7–9. Pedote's misjoinder theory under Rule 8(b) is, therefore, rejected.

■ The Court now addresses Pedote's Rule 14 prejudicial joinder theory. The prejudice identified by Pedote is that a jury will transfer its feelings from the firearms counts to the conspiracy count. The Court, however, has already found the firearms counts identify but a portion of the conspiracy to rob BMJ. Further, the Court has confidence that the jury will heed its instructions at the conclusion of trial and consider the evidence with relation to the offenses charged in each count. *See United States v. Aleman*, 609 F.2d 298, 310 (CA7 1979) (severance denied, no abuse of discretion found where robbery conviction introduced and indictment contained additional charges upon which robbery conviction was inadmissible). Accordingly, the Court finds Pedote has failed to show a substantial risk of prejudice or that whatever prejudice exists outweighs the efficiency of a joint trial of all four counts of the indictment. The Court now turns to Swiatek's motion for severance.

■ Swiatek's first theory is premised on his assertion that he was but a slight participant in the alleged conspiracy. The theory that the least culpable member of a conspiracy should be severed from a trial of the whole conspiracy does not easily satisfy the movant's burden of showing he

cannot receive a fair trial. *See Velasquez,* 772 F.2d at 1352. Consequently, without more than a mere assertion of prejudice Swiatek's motion must fail.

■■■ Next, Swiatek contends severance is required because his co-defendant, Bambulas, will testify on his behalf at trial. Although Swiatek's brief promises to furnish an affidavit supporting his assertion that Bambulas will testify in his behalf, to this date no such affidavit has been forthcoming. The mere assertion by Swiatek that Bambulas will testify is, therefore, an insufficient basis for granting severance in this case. *Cf. United States v. Harris,* 542 F.2d 1283, 1312–13 (CA7 1976) (movant for severance must show 1) co-defendant's testimony would be exculpatory, 2) co-defendant would, in fact, provide testimony at a separate trial which he would not provide at a joint trial, 3) significance of the testimony will be so great that, under the totality of the circumstances, its absence would deny the movant a fair trial). *Accord United States v. Oxford,* 735 F.2d 276, 280–81 (CA7 1984). Based on the foregoing, Swiatek's motion for severance is denied. If the affidavit his brief promised should be forthcoming, however, he may press the Court to reconsider this ruling.

### IV Motion to Dismiss

Pedote moves to dismiss the indictment because it fails to charge he took an active step toward the goal of robbing BMJ. Generally, in order to sustain the conspiracy count, the government must prove 1) an agreement between two or more persons, 2) the specific intent to commit an unlawful act and 3) an act in furtherance of the agreement. *United States v. Cova,* 755 F.2d 595, 598 (CA7 1985). All of these elements are charged in Count I, but the Court finds the government need not prove Pedote committed an overt act in furtherance of a conspiracy to violate 18 U.S.C. § 1951(a).

■■■ The language of section 1951(a) does not specifically require an overt act in order to establish a conspiracy to obstruct commerce. At least one court has held

that no overt act need be proved in order to sustain a conviction under § 1951(a). *See, e.g., United States v. Callanan,* 173 F.Supp. 98, 101, *aff'd,* 274 F.2d 601, *aff'd,* 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (D.Mo.1959). The Seventh Circuit has not required the government to prove an overt act when it is not explicitly required by statute. *See, e.g., Cova,* 755 F.2d at 597–98 (prosecution under 21 U.S.C. § 846). Because § 1951(a) does not specifically require proof of an overt act in furtherance of a conspiracy to obstruct commerce, this Court is reluctant to imply such a requirement. Pedote's motion to dismiss is, therefore, denied.

### V Hearing on Motion to Suppress

Pedote has moved to suppress statements he made to the government *after* his arrest on August 20, 1985. Pedote contends he did not knowingly and voluntarily waive his *Miranda* rights to silence, the presence of an attorney and to terminate interrogation. The Court finds a hearing on Pedote's contentions is warranted. The hearing will be held immediately before the trial.

### VI Due Process Hearing

Swiatek requests a hearing so that the Court may determine if government misconduct occurred during the government's investigation which violated his due process rights as secured by the fifth amendment. Whether government misconduct during the investigatory stage is sufficiently egregious to offend fifth amendment due process and compel the dismissal of an indictment is a question of law for the Court. *United States v. Johnson,* 565 F.2d 179, 182 (CA1 1977). Because it presents a question of law for the Court, the issues surrounding Swiatek's due process defense could be decided before, during or after a trial.

Fed.R.Crim.P. 12(b) provides that any defense capable of determination without trial *may* be brought before trial by motion. Subsection (b)(1) of the Rule requires any defenses or objections based on defects in

the institution of the proceeding must be raised prior to trial. Swiatek, therefore, is procedurally correct in pressing his due process motion and request for a hearing prior to trial. Despite the provisions of Rule 12(b), however, Rule 12(e) provides the trial court with substantial discretion ("for good cause") to defer ruling on a pretrial motion until trial or after the verdict. The Court finds the most efficient manner for determining Swiatek's due process motion is at a post-verdict hearing.

Swiatek's due process theory requires proof of egregious government misconduct. *See United States v. Thoma,* 726 F.2d 1191, 1198 (CA7 1984). That proof in turn requires testimony concerning the government's investigation. Much of the same information will be presented in support of and in opposition to the charges levelled in the indictment. There is likely to be much repetition between the proof on Swiatek's motion and the proof at trial. Thus, much redundancy can be avoided by deferring Swiatek's due process motion until after the verdict. This would be especially true if Swiatek raises the related theory of entrapment as a defense at trial. *See generally* Comment, *Entrapment, DeLorean and the Undercover Operation: A Constitutional Connection,* 18 J.Mar.L.Rev. 365 (1985).

▮ Swiatek's motion for a due process hearing before trial is denied. The Court will entertain the merits of holding a post-veridct hearing after trial. In the meantime, the Court finds a sufficient basis for requiring the parties to submit briefs regarding the elements necessary to sustain a claim of a fifth amendment due process violation based on government misconduct during the investigation of Swiatek. *See, e.g., Thoma,* 726 F.2d at 1199. Accordingly, Swiatek is given 14 days to provide the Court with a brief detailing his understanding of the necessary elements to sustain a due process defense and the *specific* allegations of misconduct in the present case which meet those requirements. The government is given 14 days to respond. Swiatek has 7 days to reply, if he feels a reply is necessary. The Court will rule on the matter and determine if a hearing is necessary after the verdict and upon Swiatek's motion.

### VII Santiago Hearing

▮ Pedote moves for a hearing on the admissibility of co-conspirator statements at trial under Fed.R.Evid. 801(d)(2)(E). *See United States v. Santiago,* 582 F.2d 1128, 1134–35 (CA7 1978). In response to Pedote's motion, the government has submitted a proffer of evidence to support the admissibility of co-conspirator statements. Pedote has not replied to the government's proffer of evidence.

The government's evidence supports the theory that Swiatek and Bambulas were members in a conspiracy to rob BMJ from February 20, 1985 to August 20, 1985. The evidence also supports the theory that Pedote was a member of the conspiracy from March 23, 1985 until his arrest on August 20, 1985. The specific proof submitted at trial may vary the exact time frame of the conspiracy, but based on the government's proffer of evidence, the Court is satisfied the requirements of *Santiago* have been met. If Pedote has specific objections to the government's evidence, he may submit a reply brief within 14 days of this order and the Court will reconsider this ruling. Pedote may, of course, decide to leave his specific objections for trial. Based on the foregoing, Pedote's motion for a *Santiago* hearing prior to trial is denied.

IT IS SO ORDERED.